**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq.
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEFF HULL, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>    Plaintiff,<br><br>    v.<br><br>GLOBAL DIGITAL SOLUTIONS, INC., RICHARD J. SULLIVAN, DAVID A. LOPPERT, WILLIAM J. DELGADO, ARTHUR F. NOTERMAN, and STEPHANIE C. SULLIVAN,<br><br>    Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jeff Hull, individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's Complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all

1

other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by Global Digital Solutions, Inc. ("Global Digital" or the "Company"), as well as media and analyst reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities, other than Defendants and their affiliates, who purchased the publicly traded Global Digital securities from October 8, 2013 through August 12, 2016, both dates inclusive ("Class Period"), seeking to recover compensable damages caused by Defendants' violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

4.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as the Company is incorporated in this District and a substantial part of the conduct complained of herein occurred in this District and

5.     In connection with the acts, conduct and other wrongs alleged herein, Defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications, and the facilities of the national securities exchange.

## **PARTIES**

6.     Plaintiff Jeff Hull as set forth in the attached PSLRA Certification, acquired Global Digital securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

7.     Defendant Global Digital is a New Jersey corporation headquartered in West Palm Beach, Florida. Global Digital securities trade on OTC under the ticker symbol "GDSI."

8.      Defendant Richard J. Sullivan ("R. Sullivan") was the Chief Executive Officer ("CEO") and Chairman of the Board of Directors ("Chairman") of the Company from August 12, 2013 until his resignation on May 13, 2016.

9.      Defendant David A. Loppert ("Loppert") was the Chief Financial Officer ("CFO") of the Company from August 12, 2013 to until his retirement on April 10, 2015.

10.     Defendant William J. Delgado ("Delgado") was a director from September 22, 2004 and Executive Vice President of the Company from August 12, 2013 until May 13, 2016, when he was appointed as the CEO and Chairman of the Company. Defendant Delgado was previously the CEO and Chairman from August of 2004 through August of 2013.

11.     Defendant Arthur F. Noterman ("Noterman") was a director of the Company from August 12, 2013 until his resignation on May 13, 2016.

12.     Defendant Stephanie C. Sullivan ("S. Sullivan") was a director of the Company from August 12, 2013 until her resignation on May 13, 2016.

13.     Collectively, Defendants R. Sullivan, Loppert, Delgado, Noterman, and S. Sullivan are herein referred to as "Individual Defendants."

14.     Collectively, Defendant Global Digital and Individual Defendants are herein referred to as "Defendants."

15.     Each of the Individual Defendants:

a.   directly participated in the management of the Company;

b.   was directly involved in the day-to-day operations of the Company at the highest levels;

c.   was privy to confidential proprietary information concerning the Company and its business and operations;

d.   was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

e.   was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

f.   was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

g.   approved or ratified these statements in violation of the federal securities laws.

16.   Global Digital is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

17.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Global Digital under *respondeat superior* and agency principles.

## SUBSTANTIVE ALLEGATIONS

### Background

18.     Global Digital purportedly builds mobile command/communications and specialty vehicles for emergency management, first responders, national security, and law enforcement operations.

19.     On October 22, 2012, the Company entered into a merger agreement to acquire 70% of Airtronic USA, Inc. ("Airtronic") once Airtronic successfully reorganized and emerged from bankruptcy (the "Merger").

20.     From October 2012 through November 2013, the Company was actively involved in the day to day management of Airtronic pending the completion of the Merger.

21.     From August 2012 through November 2013, the Company was actively involved in managing Airtronic.

22.     On October 2, 2013, the U.S. Bankruptcy Court for the Northern District of Illinois confirmed Airtronic's amended plan of reorganization (the "Plan"). Under the terms of the Plan, Airtronic needed to close the Merger with the Company within 60 days following the confirmation date, *i.e.*, on or before

December 2, 2013, to obtain the funds necessary to pay its creditors in accordance with the Plan.

23.     Subsequently, Airtronic refused to close the Merger with the Company and the Plan terminated and the reorganized Airtronic re-vested in the bankruptcy estate of Airtronic as debtor in possession.

### Defendants' False and Misleading Class Period Statements

24.     The Class Period begins on October 8, 2013, when the Company issued a press release touting the Merger, which stated in relevant part:

**Global Digital Solutions' Planned Merger Partner, Airtronic USA, Becomes Exclusive OEM Supplier For A Major International Client Under A Private Label Agreement With An Estimated First Stage Value of Approximately $95 Million**

*The agreement is for Airtronic's family of M203 and M203A grenade launchers, some of which will be equipped with Airtronic's patent-pending locking device that imparts enhanced stability and accuracy*

PALM BEACH, Fla., Oct. 8, 2013 /PRNewswire/ -- Global Digital Solutions, Inc. (GDSI), a company that is positioning itself as a leader in providing small arms manufacturing, complementary security and technology solutions and knowledge-based, cyber-related, culturally attuned social consulting in unsettled areas, today announced that ***the company's planned merger partner, Airtronic USA, Inc. ("Airtronic"), has become the exclusive OEM (Original Equipment Manufacturer) supplier for a major international client under a private label agreement with a first stage value of approximately $95 million.***

The agreement is for Airtronic's family of M203 and M203A grenade launchers, some of which will be equipped with Airtronic's patent-pending locking device that imparts enhanced stability and accuracy.

"This is exciting but not completely unexpected news," said GDSI's President and CEO Richard J. Sullivan. "The agreement demonstrates what we have been saying all along: Airtronic is well-positioned for strong growth as a well-respected, advanced small arms manufacturer. We congratulate the entire Airtronic team on this significant development."

On October 2, 2013, the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, confirmed the amended chapter 11 bankruptcy reorganization plan ("Plan") submitted by Airtronic. Now that the Plan has been confirmed by the court, GDSI will be able to complete its acquisition of Airtronic. Airtronic's bankruptcy case will be dismissed upon the consummation of the Plan - which includes completion of the merger with GDSI - and Airtronic will be capitalized with adequate working capital to compete effectively as an innovative leader in small arms manufacturing.

"We're thrilled to be able to announce this substantial OEM agreement so soon after the court confirmed our reorganization plan," said Dr. Merriellyn Kett, Airtronic's President and CEO who will continue serving as the company's CEO after the merger between GDSI and Airtronic is finalized. "The Airtronic team has been very busy working to meet the needs of our customers in the United States and around the world. ***This exclusive OEM agreement is a testament to the world-class quality of our products and the excellent relationships we have established with our customers over the years***."

(Emphasis added).

25.    On October 11, 2013, the Company issued a press releases touting the

Merger, which stated in relevant part:

**Global Digital Solutions, Inc. (GDSI) Receives Notification That the Securities and Exchange Commission (SEC) Has Completed Its Review of the Company's Form 10 Registration Statement -- GDSI Is Now a Reporting Company Under the Securities Exchange Act of 1934**

8

*Continuing GDSI's recent momentum, this announcement comes soon after GDSI's planned merger partner, **Airtronic USA, Inc., signed OEM supplier agreement with a first stage value of approximately $95 million***

PALM BEACH, Fla., Oct. 11, 2013 /PRNewswire/ -- Global Digital Solutions, Inc. (GDSI), a company that is positioning itself as a leader in providing small arms manufacturing, complementary security and technology solutions and knowledge-based, cyber-related, culturally attuned social consulting in unsettled areas, today announced that the Securities and Exchange Commission (SEC) has advised the Company that the SEC has completed its review of the Company's Registration Statement on Form 10, filed on August 10, 2013, as amended.

The Company is now a reporting Company under the Securities Exchange Act of 1934 and expects to file its quarterly report for the quarter ended September 30, 2013 on Form 10-Q within the prescribed time frame.

"This is another important step in the evolution of GDSI," said GDSI's President and CEO Richard J. Sullivan. "This news is especially welcome coming so soon after two other important developments: ***our October 8, 2013 announcement that Airtronic has become the exclusive OEM supplier for a major international client with a first stage value of approximately $95 million*** and the October 2nd court confirmation of Airtronic's reorganization plan. All of these recent developments build enormous momentum for GDSI."

(Emphasis added).

26.     On October 21, 2013, the Company issued a press releases touting the

Merger, which stated in relevant part:

**Global Digital Solutions, Inc. (GDSI) Continues Recent Momentum By Signing Midtown Partners & Company LLC, Headquartered In New York City, As Exclusive Investment Banking Advisor**

9

*Midtown Partners specializes in providing creative financial solutions to high growth companies within the lower middle market across a broad range of industries relevant to GDSI's global growth strategy, including defense, technology, energy and alternative energy, natural resources and aerospace, and emerging markets*

PALM BEACH, Fla., Oct. 21, 2013 /PRNewswire/ -- Global Digital Solutions, Inc. (GDSI), a company that is positioning itself as a leader in providing small arms manufacturing, complementary security and technology solutions and knowledge-based, cyber-related, culturally attuned social consulting in unsettled areas, today announced that it has signed Midtown Partners & Company, LLC ("Midtown") of New York City as its exclusive investment banking advisor.

"This agreement with Midtown Partners continues GDSI's recent momentum," said GDSI's President and CEO Richard J. Sullivan. "As announced on October 11, 2013, we are now a reporting Company under the Securities Exchange Act of 1934. ***Before that we announced on October 8, 2013, that our planned merger partner Airtronic USA has become the exclusive OEM supplier for a major international client with a first stage value of approximately $95 million***. Also, on October 2nd, we announced court confirmation of Airtronic's reorganization plan. Today's announcement means that we're partnering with a proven and experienced team of investment advisors who have a track record of success in securing financing in industries and sectors that are relevant to our global growth strategy. We're excited about this agreement and we expect to see very good things to emerge as we move forward in executing our global growth strategy."

(Emphasis added).

27.    The statement referenced in ¶¶ 24 – 26 above were materially false and/or misleading because they misinterpreted and failed to disclose the following adverse facts pertaining to the Company's business and operations which were known to Defendants or recklessly disregarded by them. Specifically, Defendants

10

made false and/or misleading statements and/or failed to disclose that: (1) Airtronic original equipment manufacturer ("OEM") supplier agreement did not exist; (2) the Company failed to remove these misleading statements from its website despite repeated requests to do so from the CEO of Airtronic; and (3) as a result, Defendants' statements about the Global Digital's business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

28.   On November 15, 2013, the Company issued a press release disclosing its expected near-term results and anticipating several acquisitions, which stated in relevant part:

**Global Digital Solutions, Inc., Offering Additional Details to the Public About Strategic Plans and Expected Near-Term Results, Anticipates Several Targeted Acquisition Agreements in the Fourth Quarter of 2013 and an Annual Revenue Run Rate Between $60 Million and $75 Million During the First Quarter of 2014**

*Today's announcement continues company's ongoing effort to keep the public apprised of important developments in implementing global growth strategy as outlined in the President and CEO's Open Letter released on October 29, 2013*

PALM BEACH, Fla., Nov. 15, 2013 /PRNewswire/ -- Global Digital Solutions, Inc. (GDSI), a company that is positioning itself as a leader in providing cyber arms manufacturing, complementary security and technology solutions and knowledge-based, cyber-related, culturally attuned social consulting in unsettled areas, today offered additional details about the company's strategic plans and expected near-term results.

11

*During the fourth quarter of 2013, GDSI expects to be able to announce several agreements regarding potential acquisitions that fit into the company's targeted global growth strategy.* It goes without saying that these agreements will be subject to due diligence and financing approval.

Taking into account GDSI's various lines of business and assuming these additional strategic acquisitions move forward as expected, the company now anticipates that if it closes the potential acquisitions, it may achieve an annual revenue run rate between $60 million and $75 million during the first quarter of 2014.

Today's announcement continues the company's ongoing effort to keep the public apprised of all important developments related to implementing GDSI's global growth strategy as outlined in the Open Letter from Richard J. Sullivan, GDSI's President and CEO, on October 29, 2013. The entire Open Letter to the Public is available on GDSI's website at http://gdsi.co/rjs_open_letter.html.

"We're making this additional information publicly available in the interests of fairness and complete transparency," said Richard J. Sullivan, GDSI's President and CEO. "We believe it's important to let everyone know what actions we're taking to implement our strategy, which I outlined in my Open Letter recently. We're actively engaged in several exciting, strategically significant discussions that we believe will come to fruition in the fourth quarter of 2014. Taking everything into account, *we now expect GDSI to achieve an annual revenue run rate of between $60 million and $75 million in the first quarter of next year*. This is very important information and we believe we have an obligation to publicly disclose our plans and expectations."

(Emphasis added).

29.    The statement referenced in ¶ 28 above was materially false and/or misleading because it misinterpreted and failed to disclose the following adverse facts pertaining to the Company's business and operations which were known to

Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company lacked a reasonable basis for its revenue projection; (2) the Company had no credible financing in place to acquire any company; (3) as a result, Defendants' statements about the Global Digital's business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## The Truth Begins to Emerges

30.   The Merger did not close by December 2, 2013 due in part to the Company's failure to remove the misleading statements about Airtronic from the Company's website despite repeated requests from the CEO of Airtronic. As a result, shares of the Company fell $0.04 per share or 10% to close at $0.36 per share on December 3, 2013, damaging investors.

## Defendants' Additional False and Misleading Class Period Statements

31.   On March 11, 2014, the Company issued a press release announcing its intention to acquire Remington Outdoor Company and two additional companies, which stated in relevant part:

**Global Digital Solutions Files Form 8-K, Announces Unsolicited Letter of Intent to Acquire Remington Outdoor Company, with Estimated Annual Sales of $1.25 Billion and a Purchase Price of Approximately $1.082 Billion**

*Form 8-K filing also provides information on proposals to acquire two additional U.S.-based companies – a technology firm with annual revenue of approximately $25 million and a distribution company*

*with annual revenue of approximately $30 million – and a status update of GDSI's transactions with Airtronic USA, Inc.*

PALM BEACH, Fla., March 11, 2014 /PRNewswire/ -- Global Digital Solutions, Inc. (GDSI), a company that is positioning itself as a leader in providing cyber arms manufacturing, complementary security and technology solutions and knowledge-based, cyber-related, culturally attuned social consulting in unsettled areas, today filed a Form 8-K with the Securities and Exchange Commission ("SEC") providing information regarding three proposed transactions, including *an unsolicited letter of intent to acquire Remington Outdoor Company, Inc., also known as Freedom Group, Inc. ("Freedom"). GDSI has made an unsolicited offer to purchase freedom for $1.082 billion in cash. Freedom has estimated that its net sales for 2013 will be in the range of $1.250 billion to $1.275 billion and that its adjusted EBITDA will be in the range of $235 million to $240 million.* The Form 8-K may be accessed at www.sec.gov or on GDSI's website at www.gdsi.co.

\*     \*     \*

As described in the Form 8-K, *GDSI has also entered into non-binding letters of intent relating to the proposed acquisitions of two privately held, U.S.-based companies. One involves a technology and development services firm with annual revenue of approximately $25 million. The other is a military and law enforcement supply and distribution company with annual revenue of approximately $30 million.*

All three proposed acquisitions are subject to completion of due diligence, completion of satisfactory acquisition agreements and other customary conditions, including financing.

The Form 8-K also provides an update regarding GDSI's transactions with Airtronic USA, Inc. (Emphasis added).

(Emphasis added).

14

32.    On that same day, the Company filed a Form 8-K with the SEC discussing its unsolicited offer to purchase Remington and two additional companies, which stated in relevant part:

> **The Freedom Group Proposal.** *The Company submitted a non-binding proposal, dated January 27, 2014, for the acquisition of the Remington Outdoor Company, Inc., also known as Freedom Group, Inc. ("Freedom"). The Company received no response to such proposal and, by its terms, it expired on February 17, 2014.* In order to facilitate discussions, the Company has revised its proposal by leaving certain basic terms open for future negotiations and submitted a revised non-binding proposal, dated March 10, 2014. Under the proposal, the Company would offer consideration valued at eight times the 2013 consolidated EBITDA of Freedom and its specified subsidiaries less long term indebtedness. The Company estimates such EBITDA at $237.5 million and such long- term indebtedness at $818 million, which would result in total consideration of $1,082 million. Such amount would be subject to determination and adjustment as described in the proposal. Freedom has estimated that its net sales for 2013 will be in the range of $1,250.0 million to $1,275.0 million and that its adjusted EBITDA will be in the range of $235.0 million to $240.0 million.
>
> *        *        *
>
> Private Company 1 Letter of Intent. The Company entered into a non-binding letter of intent with a private company ("PC1"), in Q4 2013, under which the Company would acquire PC1 at a price, to be paid in cash, equal to six times PC1's 2013 EBITDA, determined as described in the letter of intent, and subject to adjustment based on the audited financial statements of PC1 for 2013. PC1's unaudited revenue for 2013 was approximately $30 million and unaudited EBITDA was approximately $2.6 million. Based on the Company's estimate of the EBITDA determined pursuant to the letter of intent, the purchase price would be $15.62 million.
>
> *        *        *

Private Company 2 Letter of Intent. The Company also entered into a non-binding letter of intent with another private company ("PC2"), in Q4 2013, under which the Company would initially acquire 80% of the outstanding shares of PC2 for a purchase price, payable partly in cash and partly in shares of the Company, based on a ten times multiple of the EBITDA of PC2 for specified fiscal years, to be determined, and subject to adjustment, as described in the letter of intent.

(Emphasis added).

33.   On March 12, 2014, the Company issued a nearly identical press release, which corrected that the offer to acquire Remington was for $1.082 Billion "in cash and shares" of the Company, which stated in relevant part:

**/C O R R E C T I O N -- Global Digital Solutions, Inc./**

PR Newswire

PALM BEACH, Fla., March 11, 2014

In the news release, Global Digital Solutions Files Form 8-K, Announces Unsolicited Letter of Intent to Acquire Remington Outdoor Company, with Estimated Annual Sales of $1.25 Billion and a Purchase Price of Approximately $1.082 Billion, issued 11-Mar-2014 by Global Digital Solutions, Inc. over PR Newswire, we are advised by the company that the first paragraph, second sentence, should read "GDSI has made an unsolicited offer to purchase Freedom for $1.082 billion in cash and shares of GDSI's common stock," rather than "GDSI has made an unsolicited offer to purchase freedom for $1.082 billion in cash," as issued inadvertently. The complete, corrected release follows:

**Global Digital Solutions Files Form 8-K, Announces Unsolicited Letter of Intent to Acquire Remington Outdoor Company, with Estimated Annual Sales of $1.25 Billion and a Purchase Price of Approximately $1.082 Billion**

**Form 8-K filing also provides information on proposals to acquire two additional U.S.-based companies - a technology firm with annual revenue of approximately $25 million and a distribution company with annual revenue of approximately $30 million - and a status update of GDSI's transactions with Airtronic USA, Inc.**

(Emphasis in original).

34.    On March 12, 2014, the Company filed a Form 8-K with the SEC correcting its Form 8-K filed on the previous day, which stated in relevant part:

> On March 11, 2014, Global Digital Solutions, Inc., a New Jersey corporation (the "Company"), filed a Current Report on Form 8-K under Item 8.01 (the "Initial Report") to report it had entered into two non-binding letters of intent relating to proposed acquisitions, and has submitted a non-binding proposal for another acquisition. The Company filed a press release attached to the Initial Report which omitted certain information. Accordingly, the Company has corrected the first paragraph, second sentence, of the press release to read "GDSI has made an unsolicited offer to purchase Freedom for $1.082 billion in cash and shares of GDSI's common stock," rather than "GDSI has made an unsolicited offer to purchase freedom for $1.082 billion in cash," as issued inadvertently. The complete, corrected release is attached hereto as Exhibit 99.1.

35.    The statement referenced in ¶¶ 31 – 34 above were materially false and/or misleading because they misinterpreted and failed to disclose the following adverse facts pertaining to the Company's business and operations which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company had no credible financing in place to acquire any company; (2) Remington only wanted a fully-financed, cash-only deal; (3) the Company

received various communications indicating Remington had no interest in the Company's offer; (4) Remington had already rejected the Company's offer on several occasions; and (5) as a result, Defendants' statements about the Global Digital's business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

### The Truth Continues to Emerge

36.   On March 12, 2014, immediately prior to the close of trading. *Bloomberg* reported on an internal memo Remington sent to its employees, dismissing the potential sale of Freedom Group, which stated in part:

> A small, unknown investment entity publicly announced its desire to acquire the Remington Outdoor Company," says the memo, which was written by company CEO George Kollitides and obtained by Grand View Outdoors. "If this wasn't disruptive to our employees and customers, we would not acknowledge the news and recognize it for what it is: a publicity stunt from an agenda-driven group with no credible financing options.

37.   On this news, shares of the Company fell $0.13 per share or over 15% over the next two days to close at $0.73 per share on March 14, 2016, further damaging investors.

### Defendants' Additional False and Misleading Class Period Statements

38.   On March 28, 2014, the Company filed its Form 10-K for the fiscal year ended December 31, 2013, which stated the following with regards to the Remington offer:

**The Freedom Group Proposal.** We submitted a non-binding proposal, dated January 27, 2014, for the acquisition of Remington Outdoor Company, Inc., also known as Freedom Group, Inc. ("Freedom"). ***We received no response to such proposal*** and, by its terms, it expired on February 17, 2014. In order to facilitate discussions, we revised our proposal by leaving certain basic terms open for future negotiations and submitted a revised non-binding proposal, dated March 10, 2014. Under the proposal, the Company would offer consideration valued at eight times the 2013 consolidated EBITDA of Freedom and its specified subsidiaries less long term indebtedness. The Company estimates such EBITDA at $237.5 million and such long- term indebtedness at $818 million, which would result in total consideration of $1.082 billion. Such amount would be subject to determination and adjustment as described in the proposal. Freedom has estimated that its net sales for 2013 will be in the range of $1.250 billion to $1.275 billion and that its adjusted EBITDA will be in the range of $235 million to $240 million.

Freedom describes itself as the world's leading innovator, designer, manufacturer and marketer of firearms, ammunition and related products for the hunting, shooting sports, law enforcement and military markets. It indicates that, as one of the largest manufacturers in the world of firearms and ammunition, it has some of the most globally recognized brands including Remington®, Bushmaster® Firearms, DPMS/Panther Arms™, Marlin®, H&R®, The Parker Gun™, Mountain Khakis®, Advanced Armament Corp. ®, Dakota Arms®, Para™ USA and Barnes® Bullets. Additional information concerning Freedom is available on its website at http://www.freedom-group.com. Information on that website shall not be deemed to be incorporated in, or to be a part of, this report.

The Company estimates that there are 166,989 shares of common stock of Freedom outstanding. On this basis, the consideration per share offered in the transaction would be cash in the amount of $4,479.67 plus 1,000 shares of the Company's common stock. Total consideration would be approximately $750 million in cash and 160 million shares of the Company's common stock.

The proposal is subject to various conditions, including (1) satisfactory completion of due diligence by the Company, (2) mutual

agreement on the terms of an acquisition agreement, (3) successful completion by the Company of equity and debt offerings to provide necessary funding for the transaction, (4) receipt of required governmental and other third party approvals and (5) other customary conditions.

***The Company has not received a response to this proposal. However, the Company intends to continue efforts to enter into discussions with a view to moving forward with this proposal.*** As indicated above, the Company is not able to predict the likelihood of completion of this transaction or of any other transaction involving Freedom.

39.    The statement referenced in ¶ 38 above was materially false and/or misleading because they misinterpreted and failed to disclose the following adverse facts pertaining to the Company's business and operations which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company had no credible financing in place to acquire any company; (2) the Company received various communications indicating Remington had no interest in the Company's offer; (3) Remington had already rejected the Company's offer on several occasions; and (4) as a result, Defendants' statements about Global Digital's business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## The Truth Emerges

40.    On August 12, 2016, the SEC announced that it charged the Company and Defendants R. Sullivan and Loppert with defrauding investors by issuing false

and misleading press releases purporting that the Company was a budding leader in cyber arms manufacturing and security technology solutions.

41.   According the SEC's complaint:

- The Company misrepresented in press releases issued in October 2013 that Airtronic had a $95 million exclusive equipment manufacturing contract for sophisticated grenade launchers, when in fact Airtronic had no such contract.

- Then CEO of Airtronics repeatedly requested Global Digital to remove the press releases issued in October 2013 from Global Digital's website and specifically cited its failure to do so as one of the reasons why Airtronics terminated its merger agreement with the Company.

- The Company only had $509,224 in cash during the fourth quarter of 2013, had no reasonable basis to project annual revenue between $60 million to $75 million in its press release issued on November 15, 2013 and had no credible financing in place to conduct any of its expected acquisitions referenced in that press release.

- The Company had less than $272,000 in cash during the first quarter of 2014 and had no prospect of financing the purchase of Remington or its two other intended acquisition.

- As early as January 2014, Defendants R. Sullivan and Loppert knew that Remington only wanted a fully-financed, cash-only deal.

- Defendants R. Sullivan and Loppert knew that the Remington offer had repeatedly been rejected.

42.   On this news, shares of the Company fell $0.0011 per share or over 52% to close at $0.001 per share on August 12, 2016, further damaging investors.

43.   As a result of Defendants' wrongful acts and omissions and the precipitous decline in the market value of the Company's securities and other Class members have suffered significant losses and damages.

### PLAINTIFF' CLASS ACTION ALLEGATIONS

44.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Global Digital securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

45.   The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Global Digital securities

were actively traded on OTC. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Global Digital or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

46.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

47.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

48.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.     whether the federal securities laws were violated by Defendants' acts as alleged herein;

b.      whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Global Digital;

c.      whether the Individual Defendants caused Global Digital to issue false and misleading financial statements during the Class Period;

d.      whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

e.      whether the prices of Global Digital securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

f.      whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

49.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

50.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

a.      Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b.      the omissions and misrepresentations were material;

c.      Global Digital securities are traded in an efficient market;

d.      the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

e.      the Company traded on the OTC;

f.      the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

g.      Plaintiff and members of the Class purchased, acquired and/or sold Global Digital securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

51.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

52.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972),

as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## FIRST CAUSE OF ACTION

### Violation of Section 10(b) of The Exchange Act Against and Rule 10b-5 Promulgated Thereunder Against All Defendants

53.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

54.    This cause of action is asserted against all Defendants.

55.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to, and throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase and/or sell Global Digital's securities at artificially inflated and distorted prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, individually and as a group, took the actions set forth herein.

56.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Global Digital as specified herein.

57.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Global Digital's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Global Digital and its business operations and financial condition in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers Global Digital securities during the Class Period.

58.     Each of the Defendants' primary liability, and controlling person liability, arises from the following: (a) Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (b) by virtue of their responsibilities and activities as senior officers and/or directors of the Company, were privy to and participated in the creation, development and reporting of the Company's  plans, projections and/or reports; (c) Defendants enjoyed significant personal contact and familiarity with the other members of the Company's management team, internal reports and other data and information about the

Company's, operations, and (d) Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

59.    Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Global Digital's financial condition from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' false and misleading statements during the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by failing to take steps necessary to discover whether those statements were false or misleading.

60.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price for Global Digital's securities was artificially inflated during the Class Period.

61.    In ignorance of the fact that market prices of Global Digital's publicly-traded securities were artificially inflated or distorted, and relying directly

or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the Company's securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Global Digital's securities during the Class Period at artificially high prices and were damaged thereby.

62.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Global Digital's financial results and condition, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired Global Digital securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices or distorted prices at which they did.

63.     By virtue of the foregoing, the Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

64.     As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with

their respective purchases and sales of the Company's securities during the Class Period.

65.    This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchases of securities giving rise to the cause of action.

## SECOND CAUSE OF ACTION

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

66.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

67.    This second cause of action is asserted against each of the Individual Defendants.

68.    The Individual Defendants acted as controlling persons of Global Digital within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of aspects of the Company's dissemination of information to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contend are false and misleading. The Individual Defendants were

provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

69.    In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

70.    As set forth above, Global Digital and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

71.    By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act as they culpably participated in the fraud alleged herein. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

72.    This action was filed within two years of discovery of the fraud and within five years of Plaintiff' purchases of securities giving rise to the cause of action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

a.     Determining that this action is a proper class action, designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Class Counsel;

b.     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d.     Awarding such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: August 24, 2016                    Respectfully submitted,

                                          **THE ROSEN LAW FIRM, P.A.**

                                          By: /s/Laurence M. Rosen
                                          Laurence M. Rosen, Esq.
                                          609 W. South Orange Avenue, Suite 2P
                                          South Orange, NJ 07079
                                          Tel: (973) 313-1887
                                          Fax: (973) 833-0399
                                          Email: lrosen@rosenlegal.com

                                          Counsel for Plaintiff