UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JEFF HULL, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | : : : : | Case No 3:16-cv-05153-FLW-TJB |
| Plaintiff, | : : | |
| v. | : : | |
| GLOBAL DIGITAL SOLUTIONS, INC., RICHARD J. SULLIVAN, DAVID A. LOPPERT, WILLIAM J. DELGADO, ARTHUR F. NOTERMAN, STEPHANIE C. SULLIVAN, | : : : : : | Motion Date: July 11, 2017 |
| Defendants. | : : | |

**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS
GLOBAL DIGITAL SOLUTIONS, INC., WILLIAM J. DELGADO, AND DAVID A.
LOPPERT'S MOTIONS TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

BRINEN & ASSOCIATES, LLC
Joshua D. Brinen, Esq.
90 Broad Street, Second Floor
New York, New York 10004
(212) 330-8151 (Telephone)
(212) 227-0201 (Fax)
jbrinen@brinenlaw.com
Counsel for Defendants
Global Digital Solutions, Inc. and
William J. Delgado

Table of Contents

| | Page |
|---|---|
| Table of Authorities | ii |
| Hull's opposition as to the time-bar and scienter is unavailing. | 1 |
|     Hull's reliance on <u>Alaska Elec. Pension Fund v. Pharmacia Corp.</u> is misplaced. | 1 |
|     Hull's reliance on <u>Lapin v. Goldman Sachs Group, Inc.</u> is misplaced. | 3 |
|     Hull's reliance on <u>Rothman v. Gregor</u> is misplaced. | 4 |
| Hull's opposition as to loss causation is unavailing. | 5 |
|     Hull's reliance on <u>In re Midlantic Corp. S'holder Litig.</u> is misplaced. | 5 |
|     Hull's reliance on <u>Mine Safety Appliances Co. v. N. River Ins. Co.</u> is misplaced. | 7 |
|     Hull's reliance on <u>Semerenko v. Cendant Corp.</u> is misplaced. | 8 |
|     Hull's reliance on <u>Omanoff v. Patrizio & Zhao LLC</u> is misplaced. | 8 |
|     Hull opposition as to "price impact" is unavailing. | 9 |
| Hull's opposition as to reliance is unavailing. | 10 |
|     Hull's reliance on <u>Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Financial Corp.</u> is misplaced. | 10 |
|     Hull's reliance on <u>Landsman & Funk PC v. Skinder-Strauss Assocs.</u> is misplaced. | 11 |
|     Hull's reliance on <u>Pathfinder Mgmt., Inc. v. Mayne Pharma PTY</u> is misplaced. | 11 |
|     Hull's opposition as to over-the-counter markets is misplaced. | 12 |
| Hull's opposition as to the Section 20(a) claim is unavailing. | 14 |
|     Hull's opposition as to group pleading is misplaced. | 14 |

Table of Authorities

| | Page |
|---|---|
| Alaska Elec. Pension Fund v. Pharmacia Corp., 2012 U.S. Dist. LEXIS 67266 (D.N.J. 2012) | 2, 3 |
| Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Financial Corp., 793 F. Supp. 2d | 11 |
| Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) | 6 |
| ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co., 553 F. 3d 187 (2d Cir. 2009) | 5 |
| In re DNTW Chtd. Accountants Secs. Litig., 172 F. Supp. 3d 675 (S.D.N.Y. 2016) | 9 |
| In re Intelligroup Sec. Litig., 527 F. Supp. 2d 262 (D.N.J. 2007) | 14, 15 |
| In re Royal Dutch/Shell Transp. Sec. Litig., 380 F. Supp. 2d 509 (D.N.J. 2005) | 6 |
| Lapin v. Goldman Sachs Group, Inc., 506 F. Supp. 2d 221 (S.D.N.Y. 2006) | 4 |
| Mine Safety Appliances Co. v. N. Riv. Ins. Co., 73 F. Supp. 3d 544 (W.D. Pa. 2014) | 7, 8 |
| Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F. 3d 154 (3d Cir. 2001) | 13 |
| Omanoff v. Patrizio & Zhao LLC, 2015 US Dist LEXIS 43086 (D.N.J. 2015) | 9 |
| Pathfinder Mgmt. Inc v. Mayne Pharma PTY, 2008 U.S.Dist. LEXIS 61081 (D.N.J. 2008) | 12 |
| Semerenko v. Cendant Corp., 223 F. 3d 165 (3d Cir. 2000) | 8 |
| United States v. Georgiou, 777 F. 3d 125 (3d Cir. 2015) | 12 |

Page

Winer Family Trust v. Queen,
503 F. 3d 319 (3d Cir. 2007) ............................................................................... 15

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JEFF HULL, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | : : : : | Case No 3:16-cv-05153-FLW-TJB |
| Plaintiff, | : : | |
| v. | : : | |
| GLOBAL DIGITAL SOLUTIONS, INC., RICHARD J. SULLIVAN, DAVID A. LOPPERT, WILLIAM J. DELGADO, ARTHUR F. NOTERMAN, STEPHANIE C. SULLIVAN, | : : : : : : | Motion Date: July 11, 2017 |
| Defendants. | : : | |

**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS
GLOBAL DIGITAL SOLUTIONS, INC., WILLIAM J. DELGADO, AND DAVID A.
LOPPERT'S MOTIONS TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

Defendants Global Digital Solutions, Inc., ("Global"), and William J. Delgado, ("Delgado"), collectively "Defendants," by and through their undersigned counsel, submit this Reply to Plaintiff's Opposition to Defendants Global Digital Solutions, Inc., William J. Delgado, and David A. Loppert's Motion to Dismiss the Amended Class Action Complaint, Doc. No. 31, a copy of which is annexed hereto as Exhibit A.

**HULL'S OPPOSITION AS TO THE TIME-BAR AND SCIENTER IS UNAVAILING.**

1. Plaintiff Jeff Hull, ("Hull"), states as follows:

The SEC needed several years to piece together and make sense of the Defendants' sophisticated string of fraudulent acts, culminating in the filing of the SEC Complaint on August 11, 2016. Only then did the investing public learn all the facts necessary to form each and every element of a PSLRA claim, especially

1

        scienter, and this Action, filed on August 24, 2016, is not time-barred  See Exhibit A, *16.

2.    Hull further states as follows:

The SOL does not begin to run until the facts constituting every element, *including scienter*, could have been discovered. See Exhibit A, *16 (italics in the original) (citing to Merck & Co., Inc. v. Reynolds, 559 U. S. 633, 648-649 (2010).

3.    Hull still further states as follows:

In *Alaska Elec. Pension Fund v. Pharmacia Corp.*, No. 03-1519, 2012 WL 1680097, at *6 (D.N.J. May 14, 2012), the court held that the SOL did not begin to run until facts gave rise to the strong inference that the defendant acted with scienter, as required under the PSLRA. The court found that while a newspaper article showed defendant made a materially false statement, it showed only the "*possibility* that Defendants acted with scienter," but did not "raise a *strong inference*" of scienter. *Id.* (emphasis in original).  See Exhibit A, *17.

4.    In Alaska Elec. Pension Fund v. Pharmacia Corp., the Court established that the relevant consideration is whether a plaintiff was aware, or reasonably should have been aware, of facts implicating the defendant's state of mind. See Alaska Elec. Pension Fund v. Pharmacia Corp., 2012 U.S. Dist. LEXIS 67266, *26 (D.N.J. 2012) ("[T]he relevant consideration is whether Plaintiffs were aware (or reasonably should have been aware) of facts implicating Cox's and Pfizer's state of mind.").

5.    Here, Hull states as follows:

On March 12, 2014, after the close of trading, an internal memo from Remington CEO George Kollitides to employees was leaked, rejecting the possibility of

2

negotiations, much less a sale to GDSI:

> A small, unknown investment entity publicly announced its desire to acquire the Remington Outdoor Company….If this wasn't disruptive to our employees and customers, we would acknowledge the news and recognize it for what it is: a publicity stunt from an agenda-driven group with no credible financing options.

See Exhibit A, *11 (citing to the Amended Complaint, ¶ 80, where he alleges that "Bloomberg and other news outlets acquired and reported on" the memo.)

6. The news reports reasonably should have made Hull aware of facts implicating Global's alleged state of mind, which, according to Alaska Elec. Pension Fund v. Pharmacia Corp., is the relevant consideration.

7. In Alaska Elec. Pension Fund v. Pharmacia Corp., the Court stated that, after Merck & Co., Inc. v. Reynolds, market reaction is still a factor for a court to consider. See Alaska Elec. Pension Fund v Pharmacia Corp., 2012 U. S. Dist. LEXIS 67266 at 25 ("Courts in the Third Circuit have consistently taken market reaction into account when determining whether plaintiffs are put on notice of malfeasance. The Supreme Court's decision in Merck does not change this.") (internal citation omitted).

8. Here, Hull states that the market reacted to the news reports as follows:

> In the following two days, GDSI's stock price fell over 15%. See Exhibit A, *11.

**Hull's reliance on Lapin v. Goldman Sachs Group, Inc. is misplaced.**

9. Hull states as follows:

> The reinforcement of a false message post-dating a contrary statement "could persuade a reasonable investor into thinking" that GDSI did not have the requisite scienter. See Exhibit A, *18 (quoting Lapin v. Goldman Sachs Group, Inc., 506 F.

3

Supp. 2d 221, 236 (S.D.N.Y. 2006)).

10. In <u>Lapin v. Goldman Sachs Group, Inc.</u>, the Court noted that "relative stability of stock price at the time news allegedly put plaintiff on inquiry notice supports a finding that inquiry notice was not triggered." <u>Lapin v. Goldman Sachs Group, Inc.</u>, 506 F. Supp. 2d at 236 (internal citation omitted).

11. This action is distinguishable, as, here, Hull states that the market reaction to the news reports was a 15% decline in Global's stock price. <u>See</u> Exhibit A, *11.

**Hull's reliance on <u>Rothman v. Gregor</u> is misplaced.**

12. Hull states as follows:

[I]t was only upon the filing of the SEC Complaint that a reasonable plaintiff could have discovered Defendants' motive to use the artificially inflated stock to raise cash and make specific acquisitions.  <u>See</u> Exhibit A, *19.

13. Hull further states as follows:

The Complaint pleads, with specificity, Defendants' motive to artificially inflate share price to effectuate the acquisition, partly with inflated stock, of NASCSV and Rontan.  <u>See</u> Exhibit A, *29.

14. Hull still further states as follows:

Though Plaintiff is not required to plead motive, such allegations only strengthen the consideration, collectively, of the Complaint's scienter allegations. A seemingly generalized, common motivation may become sufficiently particularized within certain specific factual contexts so as to plead motive. In *Rothman v. Gregor*, 220 F.3d 81, 93 (2d Cir. 2000), the court held that the artificial inflation of stock price in the acquisition context may

4

be sufficient to establish scienter. While companies may have the desire to maintain a high stock price, "not every company has the desire to use its stock to acquire another company." Thus, a particularized motive, such as the desire to maintain a high stock price to fund a *specific* acquisition for fewer shares, can be evidence of scienter. See Exhibit A, *28 (emphasis in the original) (internal citation omitted).

15. However, after Rothman v. Gregor, and citing to it, the Second Circuit held that a plaintiff must allege a unique connection between the fraud and the acquisition. See ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co., 553 F. 3d 187, n. 6 (2d Cir. 2009) ("We acknowledge that the artificial inflation of stock prices in order to acquire another company may, in some circumstances, be sufficient for scienter. But the inquiry is an extremely contextual one, and in this case Plaintiffs simply did not allege a unique connection between the fraud and the acquisition.") (internal citations and quotation marks omitted).

16. Hull does not allege the requisite unique connection between the fraud and the acquisition.

### HULL'S OPPOSITION AS TO LOSS CAUSATION IS UNAVAILING.

#### Hull's reliance on In re Midlantic Corp. S'holder Litig. is misplaced.

17. Hull states as follows:

Defendants misstate the applicable standard, claiming Plaintiff must "prove" loss causation at the motion to dismiss stage, rather than adequately allege loss causation. Defendants are wrong. *See In re Midlantic Corp. S'holder Litig.*, 758 F. Supp. 226, 232-33 (D.N.J. 1990) ("Rule 9(b) does not require that a plaintiff plead with such particularity that the cause of action be proven prior even to the

summary judgment stage of the litigation."). See Exhibit A, n. 12 (citations to the record omitted).

18. However, the Supreme Court has held that, on a motion to dismiss, a court must consider both the plaintiff's need to prove loss causation and the sufficiency of the allegation of loss causation. See Dura Pharms., Inc. v. Broudo, 544 US 336, 346, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) ("Our holding about plaintiffs' need to *prove* proximate causation and economic loss leads us also to conclude that the plaintiffs' complaint here failed adequately to *allege* these requirements. We concede that the Federal Rules of Civil Procedure require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). And we assume, at least for argument's sake, that neither the Rules nor the securities statutes impose any special further requirement in respect to the pleading of proximate causation or economic loss. But, even so, the "short and plain statement" must provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests. The complaint before us fails this simple test.") (italics in the original) (internal citation and quotation marks omitted).

19. Citing to Dura Pharm. Inc v. Bruodo, this Court has held that, as an inflated purchase price cannot prove loss causation, the allegation of an inflated purchase price is insufficiently pled. See In re Royal Dutch/Shell Transp. Sec. Litig., 380 F. Supp. 2d 509, 555 (D.N.J. 2005) ("[I]n light of the recent Supreme Court decision Dura Pharm. Inc. v. Broudo, this Court determines that Lead Plaintiff has failed to adequately plead loss causation with respect to the post-January 9, 2004 share purchases. In Dura, the Court held that an inflated purchase price will not by itself constitute or proximately cause the relevant economic loss needed to allege and prove loss causation.") (internal citation omitted).

**Hull's reliance on <u>Mine Safety Appliances Co. v. N. River Ins. Co.</u> is misplaced.**

20. Hull states as follows:

> Lacking cogent arguments to undermine the well-pleaded loss causation allegations, Defendants rely instead on theories unsupported by law, and distinguishable case law. <u>See</u> Exhibit A, *32.

21. Hull further states as follows:

> First, without legal support, Defendants assert that this Court cannot infer that documents filed in the Bankruptcy and Adversary Proceedings were actually on the market. Courts within this Circuit, however, have held that "documents filed with a court in the course of adjudicatory proceedings generally must be presumed to have entered into the public domain." <u>See</u> Exhibit A, *32 (quoting <u>Mine Safety Appliances Co. v. N. River Ins. Co.</u>, 73 F. Supp. 3d 544, 559 (W.D. Pa. 2014).

22. <u>Mine Safety Appliances Co. v. N. Riv. Ins. Co.</u> is inapposite, as, there, the Court was considering "motions to file documents under seal and to redact privileged and/or confidential information from briefs and/or statements of material fact to be submitted in conjunction with each party's contemplated motion for summary judgment." <u>Mine Safety Appliances Co. v. N. Riv. Ins. Co.</u>, 73 F. Supp. 3d at 553.

23. Hull excerpts one phrase from the Court's statement, which, in its entirety, is as follows:

> Access means more than the ability to attend open court proceedings; it also encompasses the right of the public to inspect and to copy judicial records. This is because documents filed with a court in the course of adjudicatory proceedings

7

generally must be presumed to have entered into the public domain. The presumption thus extends to all pretrial motions of a nondiscovery nature. Mine Safety Appliances Co. v. N. Riv. Ins. Co., 73 F. Supp. 3d at 559 (internal citations and quotation marks omitted).

24. Mine Safety Appliances Co. v. N. Riv. Ins. Co. has nothing to do with the issue here, whether it is plausible that the stock market took notice of the court filing.

**Hull's reliance on Semerenko v. Cendant Corp. is misplaced.**

25. Hull states as follows:

At the pleading stage, there is a presumption that news will be integrated into the stock price. See Exhibit A, n. 14 (citing to Semerenko v. Cendant Corp., 223 F. 3d 178 (3d Cir. 2000)).

26. Semerenko v. Cendant Corp. states that the presumption is that the market price incorporated the allegedly fraudulent misrepresentations, not the curative news revealing the misrepresentations. See Semerenko v. Cendant Corp., 223 F. 3d at 178-179 ("Under the fraud on the market theory of reliance, the court presumes (1) that the market price of the security actually incorporated the alleged misrepresentations, (2) that the plaintiff actually relied on the market price of the security as an indicator of its value, and (3) that the plaintiff acted reasonably in relying on the market price of the security.") (internal citation omitted).

27. There is nothing in Semerenko v. Cendant Corp. to extend the presumption to the court filing that Hull alleges is curative news of Defendants' purported misrepresentations.

**Hull's reliance on Omanoff v. Patrizio & Zhao LLC is misplaced.**

28. Hull states as follows:

Defendants further incorrectly argue that an SEC complaint cannot be a corrective

8

disclosure. In <u>Omanoff</u>, 2015 WL1472566, at *7, the filing of an SEC action served as a corrective disclosure. <u>See</u> Exhibit A, *33.

29. In <u>Omanoff v. Patrizio & Zhao LLC</u>, the Court notes that there is an SEC action, dated September 30, 2013, but it is not a factor in the Court's decision regarding loss causation. <u>See</u> <u>Omanoff v. Patrizio & Zhao LLC</u>, 2015 U.S. Dist. LEXIS 43086, *16 (D.N.J. 2015) ("[T]he Court finds that Plaintiffs have sufficiently pled loss causation by alleging that the disclosures between April 1, 2011 (the day trading halted), and October 7, 2011 (the date the class period closed), partially disclosed the misrepresentations that were fully revealed on October 20, 2011 (the date Keyuan disclosed the related-party transactions).").

30. In <u>Omanoff v. Patrizio & Zhao LLC</u>, the SEC action is a factor in the Court's decision not regarding loss causation, but scienter, and the holding has been narrowly construed. <u>See</u> <u>In re DNTW Chtd. Accountants Secs. Litig.</u>, 172 F. Supp. 3d 675, n. 8 (S.D.N.Y. 2016) ("Plaintiffs cite <u>Omanoff v. Patrizio & Zhao LLC</u> for the proposition that an SEC regulatory action premised on negligent conduct can be relied on by private plaintiffs attempting to plead scienter. In <u>Omanoff</u>, however, the court did no more than reject defendants' argument that the SEC's negligence-based action established that the defendants had not committed fraud.") (internal citation omitted).

**Hull opposition as to "price impact" is misplaced.**

31. Hull states as follows:

> Finally, Defendants' argument that any inflation was removed from the stock before the filing of the SEC Complaint, essentially a "price impact" argument, is inappropriate at the motion to dismiss stage. Such a claim is appropriate at the class certification stage, as it requires expert reports and analysis. At this

9

stage, Plaintiff's allegations that GDSI's stock price fell over 52% upon the filing of the SEC Complaint suffice. See Exhibit A, *34 (internal citations omitted).

32. Hull puts too fine a point on Defendants' argument, which is that by the time the SEC complaint was filed, there was no stock price on which there could be an impact. According to Exhibit 1 to the Rosen Declaration, ("the Rosen Declaration"), which Hull submits with his opposition and to which he cites, on the day of the filing of the SEC action, Global stock was at two-and-one-tenth-tenths of one cent ($0.0021).

33. The Rosen Declaration serves to put Hull's opposition, and this action, in perspective, as it shows exactly what Hull means when, referring to filing of the SEC complaint, he states that "[u]pon this news, GDSI shares plummeted 52% on August 12, 2016." See Exhibit A, *13.

34. According to the Rosen Declaration, on the day of the filing of the SEC complaint, the stock price was two-and-one-tenth-tenths of one cent ($0.0021), and the next day it was one-tenth of one cent ($0.001).

**HULL'S OPPOSITION AS TO RELIANCE IS UNAVAILING.**

**Hull's reliance on <u>Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Financial Corp.</u> is misplaced.**

35. Hull states as follows:

Defendants' reliance argument is premature, and must fail. At the pleading stage, a reliance determination "depend[s] mainly on determinations of fact that are not appropriate at the motion to dismiss stage." See Exhibit A, *35 (quoting Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Financial Corp., 793 F. Supp. 2d 1138, 1145 (C.D. Cal. 2011)).

10

36. Hull excerpts one phrase from the Court's statement, which, in its entirety, is as follows:

> Defendants' arguments regarding economic loss, loss causation and reliance, appear to depend mainly on determinations of fact that are not appropriate at the motion to dismiss stage. Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Financial Corp., 793 F. Supp. 2d at 143.

37. Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Financial Corp. does not stand for the proposition that the issue of reliance cannot be decided on a motion to dismiss, but merely for the proposition that dismissal is unwarranted if there are questions of fact.

**Hull's reliance on Landsman & Funk PC v. Skinder-Strauss Assocs. is misplaced.**

38. Hull further states as follows:

> "When a court considers predominance, it might have to venture into the territory of the claim's merits and evaluate the nature of the evidence. In most cases, some level of discovery is essential to such an evaluation." See Exhibit A, *35 (quoting Landsman & Funk PC v. Skinder-Strauss Assocs., 640 F.2d 72, 93 (3d Cir 2011)).

39. Hull quotes an excerpt from a statement that relates to whether the requirements for class certification have been satisfied, and it has nothing to do with Defendants' motion.

**Hull's reliance on Pathfinder Mgmt., Inc. v. Mayne Pharma PTY is misplaced.**

40. Hull still further states as follows:

> "[A]t the motion to dismiss stage… adequate reliance has been pled" and [sic] issue must be decided after full consideration of discovered facts "at a later stage in the proceedings." See Exhibit A,*35 (quoting Pathfinder Mgmt. v. Mayne Pharma PTY, 2008 U.S. Dist. LEXIS 61081, *39 (D.N.J. 2008)).

11

41. Hull excerpts two phrases from the Court's statement, which, in its entirety, is as follows:

> Defendants argue that Plaintiff cannot sufficiently establish this element because Plaintiff's reliance was unreasonable in light of the circumstances surrounding the arms length transaction and the integrated non-reliance clause in the Purchase Agreement. The Court finds that at the motion to dismiss stage, adequate reliance has been pled. Whether or not this reliance was reasonable in light of the circumstances and the Purchase Agreement is more appropriately resolved at a later stage in the proceedings. The Court at this juncture cannot conclude as a matter of law that the existence of a non-reliance clause or the nature of the arms length transaction precludes Plaintiff's securities fraud claim. <u>Pathfinder Mgmt. v. Mayne Pharma PTY</u>, 2008 U.S. Dist. LEXIS 61081 at 39 (internal citation omitted).

42. <u>Pathfinder Mgmt., Inc. v. Mayne Pharma PTY</u> does not stand for the proposition that the issue of reliance cannot be decided on amotion to dismiss, but merely for the proposition that dismissal is unwarranted if there are questions of fact.

**Hull's opposition as to over-the-counter markets is misplaced.**

43. Hull states as follows:

> Defendants cite no cases in support of their claim that the case must be dismissed because GDSI's stock traded on the OTCQB, an over-the-counter exchange. <u>See</u> Exhibit A, *36 (internal citations to the record omitted).

44. Hull does not address Defendants' citation to <u>United States v. Georgiou</u>, 777 F. 3d 125, 135 (3d Cir. 2015) ("Given that a 'national securities exchange' is explicitly listed in Section

12

10(b) - to the exclusion of the OTC markets - and coupled with the absence of the Pink Sheets and the OTCBB on the list of registered national security exchanges on the SEC Webpage on Exchanges, we are persuaded that those exchanges are not national securities exchanges…."). See Doc. No. 28-1, Defendants' Brief, ¶ 69.

45. Defendants cite to Hayes v. Gross, 982 F. 2d 104, 107 (3d Cir. 1992) regarding the standards for alleging an efficient market, See Doc. No. 28-1, ¶¶ 67 and 72, and Hull cites to a different passage as follows:

> Defendants' own cited cases defeat their reliance argument. In *Hayes v. Gross*, the Third Circuit held that "the question on a motion to dismiss is not whether plaintiff has proved an efficient market, but whether he has pleaded one." The Third Circuit found sufficient the complaint's allegations that "there was an open, efficient, impersonal, well developed market for the trading of shares of Bell wherein the market price reflected publicly disseminated information." See Exhibit A, *36 (internal citation omitted).

46. Hull cannot rely on Hayes v. Gross in pleading an efficient market, as the Rosen Declaration establishes that Global stock is a penny stock.

47. In fact, according to the Rosen Declaration, in the month of August 2016, Global stock was never higher than two-and-four-tenths-tenths of one cent ($0.0024).

48. According to the Rosen Declaration, for the month of August 2016, the average daily price of Global stock was one-and-six-tenths-tenth of one cent ($0.0016).

49. The Third Circuit has stated that penny stocks are low-priced and high-risk stocks for which there frequently is no well-developed market. See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F. 3d 154, n. 14 (3d Cir. 2001) ("Penny stocks are low-priced, high

13

risk equity securities for which there is frequently no well-developed market.") (quoting Hoxworth v. Blinder, Robinson & Co., 980 F. 2d 912, n. 1 (3d Cir. 1992)).

### HULL'S OPPOSITION AS TO THE SECTION 20(a) CLAIM IS UNAVAILING.

#### Hull's opposition as to group pleading is misplaced.

50. Hull states as follows:

Defendants incorrectly accuse Plaintiff of "group pleading." See Exhibit A, n. 22 (quotation marks in the original).

51. Hull further states as follows:

The Complaint alleges that, along with Defendant Sullivan, Defendants Loppert (CFO) and Delgado (vice president in charge of "business development") were high-level officers and executives of GDSI during the Class Period who controlled the Company's SEC filings and other public disclosures. This places Loppert and Delgado within the meaning of "controlling persons" under Section 20(a). See Exhibit A, *38 (internal citations omitted).

52. Hull does not address Defendants' argument that this allegation constitutes group pleading:

Plaintiff's allegation that the Individual Defendants are control persons by virtue of their executive positions constitutes group pleading. See In re Intelligroup Sec. Litig., 527 F. Supp. 2d 262 at n. 8 ("The group pleading doctrine allows plaintiffs in securities fraud cases to attribute corporate statements to one or more individual defendants based solely on their corporate titles.") (internal citation omitted). See Doc. No. 28-1, ¶ 98.

53. Neither does Hull address Defendants' argument that the Private Securities

14

Litigation Reform Act (PSLRA) precludes group pleading:

> The Private Securities Litigation Reform Act precludes Plaintiff's group pleading. See In re Intelligroup Sec. Litig., 527 F. Supp. 2d 262, n. 8 [(D.N.J. 2007)] ("The courts have held that the PSLRA forecloses the practice of group pleading in securities fraud cases."). See Doc. No. 28-1, ¶ 99.

54. Neither can Hull refute Defendants' argument, as the rule in the Third Circuit is that the PSLRA precludes group pleading. See Winer Family Trust v. Queen, 503 F. 3d 319, 334-335 (3d Cir. 2007) ("Assuming Winer can properly plead violations of Rule 10b-5, it contends the Individual Defendants are liable for misrepresentations and omissions based upon the group pleading doctrine. 'Smithfield [Foods] and the Individual Defendants were responsible for the accuracy of the public reports and releases detailed herein as 'group published' information, and are therefore responsible and liable for the representations contained therein.' Specifically, Winer asserts liability on the basis of the Individual Defendants' access to, control over, and ability to edit and withhold dissemination of Pennexx's press releases and SEC filings. In rejecting this argument, the District Court held the group pleading doctrine did not survive the specific pleading requirements of the PSLRA. We agree.").

DATED:    New York, New York
June 26, 2017

Respectfully submitted,

/s/ Joshua D. Brinen
Joshua D. Brinen
Brinen & Associates, LLC
90 Broad Street, Second Floor
New York, New York 10004
(212) 330-8151 (Telephone)
(212) 227-0201 (Fax)
jbrinen@brinenlaw.com
Attorneys for Defendants Global Digital
Solutions, Inc. and William J. Delgado